IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| TERRENCE M. HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 305-054 |
| | ) | |
| RAYMOND HEAD, Manager, Inmate | ) | |
| Affairs Unit, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

*Pro se* Plaintiff Terrence M. Howard, an inmate incarcerated at Hays State Prison in

Trion, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. As

Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential

defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by

*pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972)

(*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or

malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A.

This case was originally filed in the Middle District of Georgia. Howard v. Head,

5:04-cv-00251-WDO-CWH (M.D. Ga. Aug. 9, 2004). Nevertheless, by Order of the

Honorable Wilbur D. Owens, Jr., United States District Judge, Plaintiff's claims related to

events alleged to have occurred at Hays State Prison were transferred to the Northern District

of Georgia, and the claims related to Telfair State Prison ("TSP"), Plaintiff's former place

of confinement, were transferred to this Court. (Id., Order dated Mar. 2, 2005). However, when the case file was forwarded to this Court, there was no direction as to which Defendants should be docketed into the case in this District. Thus, to give proper effect to Judge Owens' Order and to clarify the claims that Plaintiff has in this District against Defendants located at TSP in Helena, Georgia, the Court directed Plaintiff to amend his complaint to include only his allegations against Defendants located in this District. (Doc. no. 1). Plaintiff complied with the Court's instruction, and it is that amended complaint that

of confinement, were transferred to this Court. (Id., Order dated Mar. 2, 2005). However, when the case file was forwarded to this Court, there was no direction as to which Defendants should be docketed into the case in this District. Thus, to give proper effect to Judge Owens' Order and to clarify the claims that Plaintiff has in this District against Defendants located at TSP in Helena, Georgia, the Court directed Plaintiff to amend his complaint to include only his allegations against Defendants located in this District. (Doc. no. 1). Plaintiff complied with the Court's instruction, and it is that amended complaint that is now before the Court for screening. (Doc. no. 2).

## I. BACKGROUND

Plaintiff states that when he first entered the prison system in June of 2000, his teeth were "in good health." Upon leaving the Jackson Diagnostic Prison, Plaintiff was assigned to TSP at the end of June of 2000. Plaintiff asserts that in late 2001, he began filing Health Service Requests to have his teeth cleaned, a root canal finished, and a filling replaced that fell out while he was eating. Plaintiff asserts that on December 27, 2001, he was seen by Defendant Franks, a dentist at TSP, but Plaintiff maintains that Dr. Franks refused to treat him. (Doc. no. 2, p. 5). Plaintiff states that he wrote an "informal grievance/complaint" to Defendant Turner, the Health Concern Coordinator at TSP, regarding Dr. Franks, but he received no response.

Plaintiff states that he was seen by a dental hygenist on March 21, 2002 to have his teeth cleaned, but Dr. Franks allegedly again refused to treat his tooth that needed a filling and a root canal. Moreover, Dr. Franks told Plaintiff that he had another tooth that needed a filling but that he would have to submit another Health Service Request form related to this

2

latest cavity. Plaintiff states that he filed that new request during the first week of April 2002, but he was never summoned for treatment.

Plaintiff states that he then waited nearly a year, until March 2003, to file another Health Service Request to have his cavities filled, but he was never treated. Plaintiff contends he filed another request on June 24, 2003, but at that time, he was told by Defendant Turner that he had been "put on the filling list" and would be called when it was his turn. Plaintiff then filed a formal grievance to Defendant Thompson, Warden at TSP, on August 5, 2003, complaining that he had not had his dental needs treated, but that grievance was denied.

Plaintiff next filed a Health Service Request on October 16, 2003 regarding a toothache and was seen on October 20, 2003 by Defendant Faison, another dentist working at TSP. (Doc. no. 2, p. 6). Dr. Faison allegedly told Plaintiff that he would need to purchase Sensodyne toothpaste for root sensitivity and then temporarily filled a molar that had "light" decay. Unhappy with the delay in treatment and having to pay for Sensodyne toothpaste, on October 27, 2003, Plaintiff wrote an "informal grievance/letter" to Defendant Etheridge, the Deputy Warden of Care and Treatment at TSP, but he claims to have received no response. His second formal grievance to Warden Thompson was also denied, and his appeal to Defendant Head, the Manager of Inmate Affairs for the Department of Corrections, was denied.

In response to a Health Service Request filed on October 31, 2003, Dr. Faison again saw Plaintiff on November 3, 2003 regarding a toothache. Plaintiff states that Dr. Faison did not take any x-rays but concluded that there was no decay present in the molar that had been

3

causing Plaintiff pain. Nevertheless, Dr. Faison told Plaintiff that the molar could be extracted; Plaintiff maintains that Dr. Faison extracted the wrong tooth because he later found out that it was an adjacent wisdom tooth that had been the source of the pain. (Id. at 7). Approximately a week later, Dr. Faison also allegedly provided temporary fillings in two more of Plaintiff's teeth.

Plaintiff transferred from TSP to Hays State Prison on November 18, 2003, and he reports that when he requested dental services there in April of 2004, x-rays revealed that he had "well-developed" cavities that Dr. Faison had failed to discover in a wisdom tooth. Moreover, the teeth in which Dr. Faison had placed temporary fillings had abscessed to the point that they, too, are in danger of having to be extracted.

## II. DISCUSSION

### A. Defendants Removed from Amended Complaint

In the Court's March 23, 2005 Order (doc. no. 1) directing Plaintiff to amend his complaint, he was warned that his amended complaint would supersede his previously filed complaint. (Doc. no. 1, p. 2 (citing Malowney v. Federal Collection Deposit Group, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994)). He was also specifically told that he must name all defendants in the caption and the body of the amended complaint. (Id.). Upon review of the amended complaint, the Court finds that Plaintiff no longer names four defendants from the original complaint as parties to the lawsuit. As Plaintiff fails either to name in the caption or to describe in the body of the amended complaint any actions taken by original Defendants Steve Upton, Betty Dean, FNU Clark, and April Brown, these four (4) Defendants be dismissed from this lawsuit.

4

**B.    Statute of Limitations**

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that the allegations raised against Defendant Franks, the dentist that treated Plaintiff in late 2001 and on March 21, 2002, do not state a claim upon which relief can be granted. Specifically, these claims are subject to dismissal under the applicable two-year statute of limitations in Georgia. See Lawson v. Glover, 957 F.2d 801, 803 (11th Cir. 1987); Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986). Although state law determines the applicable statute of limitations period for claims under § 1983, federal law determines the date of accrual. See Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996); Lavellee v. Listi, 611 F.2d 1129, 1130 (5th Cir. 1980). Under § 1983, a claim accrues when the plaintiff knows or has reason to know that he was injured, and he must be aware or should be aware who injured him. Rozar, 85 F.3d at 562. Plaintiff did not file the instant lawsuit (first, in the Middle District) until August of 2004, over two years after the last reported date that Defendant Franks treated Plaintiff in March of 2002.

As Plaintiff has known for longer than two years that he was allegedly injured by Defendant Franks's alleged improper dental care, this claim is time-barred. Accordingly, Defendant Franks should also be dismissed from the case.

**C.    No Liability Based on *Respondeat Superior***

Plaintiff alleges that Defendants Head, Thompson, Etheridge and Turner failed to make sure that he received proper dental care because they either denied his grievances, did not respond to a letter written about his situation, or simply informed him of the procedure

5

by which inmates are placed on a waiting list to see the dentist. All four of these Defendants are alleged to be supervisory officials within the TSP administration or DOC administration. They are not alleged to be directly involved in Plaintiff's dental care and treatment.

In the Eleventh Circuit, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold an official in a supervisory position liable, Plaintiff must demonstrate that either (1) the supervisor personally participated in the alleged constitutional violation, or (2) there is a causal connection between actions of the supervising official and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Plaintiff has not alleged that Defendants Head, Thompson, Etheridge, or Turner were personally involved with providing the dental treatment Plaintiff claims he should have received.

Similarly, Plaintiff fails to allege a "causal connection" between these four individuals and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[1] puts the responsible supervisor on notice

_____

[1] The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671,

or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference

to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d

1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts

support "an inference that the supervisor directed the subordinates to act unlawfully or knew

that the subordinates would act unlawfully and failed to stop them from doing so." Cottone

v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has not alleged the necessary causal

connection with respect to Defendants Head, Thompson, Etheridge,[2] or Turner, and

therefore, these four individuals should be dismissed from this case.

## D.     No Liability Based on Handling of Grievances

Finally, to the extent Plaintiff may be claiming that Defendants Thompson and Head

should be held liable for failing to properly handle his grievances, such allegations fail to

state a claim upon which relief can be granted. "Procedural requirements alone do not create

a substantive liberty interest, and mere violation of such procedures is not a constitutional

violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), *aff'd*, 198

F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir.

---

[2]Alleging that he wrote one informal letter to Deputy Warden, or that he sent a grievance to the Warden and the Head of Inmate Affairs for all of the DOC, does not satisfy the burden of putting a supervisor on notice of a widespread problem or otherwise show that the supervisor was directly involved with Plaintiff's dental care. Cf. Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions). Moreover, Plaintiff's two inquiries to Defendant Turner were separately sent well over a year apart, hardly indicating a widespread and/or continuous problem. See Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984) (pointing to single or isolated incidents not sufficient to indicate supervisor's approval of complained of inaction).

2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983). "There is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. In a nutshell, Plaintiff's bare allegations concerning deficiencies in processing his grievances do not implicate his federal constitutional rights. See id.; see also Wildberger v. Bracknell, 869 F.2d 1467, 1467-68 (11th Cir. 1989) (per curiam) (affirming lower court decision that "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution").

### III. CONCLUSION

In sum, for the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants Steve Upton, Betty Dean, FNU Clark, and April Brown be **DISMISSED** without prejudice from this civil action because Plaintiff did not name them as Defendants in his amended complaint. Additionally, the Court **REPORTS** and **RECOMMENDS** that Defendants Raymond Head, Paul Thompson, Pat Etheridge, FNU Franks, and E. Turner be

**DISMISSED** because the complaint fails to state a claim upon which relief can be granted against them.[3]

SO REPORTED and RECOMMENDED this 26th day of May, 2005, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[3]By separate Order, the Court has directed that service of process be effected on Defendant Faison.

# United States District Court
## *Southern District of Georgia*

ATTORNEYS SERVED:

Terrence M. Howard, Pro-se

CASE NO:      CV305-054

DATE SERVED:  May 26, 2005

SERVED BY:    Cindy Reynolds

☐   Copy placed in Minutes

☐   Copy given to Judge

☑   Copy given to Magistrate